# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID No. 1311013513 |
| | ) | |
| MARKEEVIS R. MCDOUGAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: September 20, 2017
Decided: December 11, 2017

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE GRANTED IN PART AND DENIED IN PART.

Cynthia F. Hurlock, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Benjamin S. Gifford, IV, Esquire, Attorney for Defendant Markeevis McDougal. (replacing John F. Kirk, IV, Esquire following full briefing on the motion)

PARKER, Commissioner

This 11th day of December 2017, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1.      On September 11, 2014, following a Superior Court jury trial, Defendant Markeevis R. McDougal was convicted of Possession of a Firearm by a Person Prohibited ("PFBPP"); Possession of Ammunition by a Person Prohibited ("PABPP"), and Carrying a Concealed Deadly Weapon ("CCDW").

2.      On January 23, 2015, McDougal was sentenced to a total of nineteen years of Level V incarceration, suspended after eleven years, followed by decreasing levels of supervision.  Specifically, McDougal was sentenced to eleven years at Level V on the PFBPP conviction, ten years of which are minimum mandatory pursuant to 11 *Del. C.* § 1448.  On the CCDW conviction, McDougal was sentenced to four years at Level V suspended for 18 months at Level III.  On the PABPP conviction, McDougal was sentenced to four years at Level V suspended for 18 months at Level III.

3.      McDougal filed a direct appeal to the Delaware Supreme Court.  On November 16, 2015, the Delaware Supreme Court affirmed the judgment of the Superior Court.[1]

## FACTS

4.      On November 20, 2013 at approximately 2 a.m., Wilmington police officers responded to reports of a domestic dispute on West 6th Street in Wilmington.[2]

---

[1] *McDougal v. State,* 2015 WL 7272051 (Del.).
[2] *McDougal v. State,* 2015 WL 7272051, *1 (Del.).

1

5.     As the officers turned on to 6th Street, they observed a small group of women pointing at a silver car and screaming "he hit her." Due to this, the police parked in front of the silver car.[3]

6.     As the patrol car was coming to a stop, McDougal exited the silver car from the front driver side. One of the officers ordered McDougal to put his hands up and come towards him. McDougal complied with the officer's demands, leaving the door to the silver car open. The officer placed McDougal in the back of the patrol car.[4]

7.     The alleged victim of the domestic dispute was still in the silver car. The police officers approached the passenger side of the vehicle and made contact with the female passenger, Tracy Brown. She was huddled against the door and crying. As one of the officers was speaking with Brown, the other police officer looked to see if there were any passengers in the back of the vehicle.[5]

8.     Because it was difficult for the officer to see into the backseat due to the vehicle's tinted windows, he stepped in the "V" area between the open door and the vehicle's frame. He observed a silver handgun with brown grips behind the driver's seat. The gun was left undisturbed in the vehicle. Brown was then removed the vehicle.[6]

9.     After Brown was removed from the vehicle, the officer asked her who owned the vehicle. She replied "it's both of ours." She was then asked if she minded if the officer searched the car, and she said "no".[7]

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

10.     The police officer then returned to the silver car. At this point the door was closed, although it is unclear who closed it. The officer opened the door and again observed the handgun behind the driver's seat. Brown then ran over and stood between the door and the car, attempting to block where the officer had seen the weapon. Brown was removed from the area, the door to the vehicle was shut by the police officer, and the police waited for the evidence detection unit to collect the gun.[8]

11.     When the officer from the evidence detection unit arrived, he removed the firearm, a Kimber .45 ACP semi-automatic handgun. The officer cleared the gun, which entails ejecting the magazine and any cartridge located in the chamber, to make it safe. The firearm was loaded with eight cartridges, including seven in the magazine and one in the chamber.[9]

12.     Although the firearm was tested for DNA and fingerprints, there was nothing of any value found to identify who had handled the firearm.[10]

13.     At trial, the defense called a witness, Maurice Harding, who claimed that the firearm was his, that McDougal did not know anything about the firearm, and that he brought the firearm along with him for protection but decided to leave it in the vehicle when he exited the vehicle to buy some drugs.[11] Harding's Affidavit to this effect was dated August 25, 2014. Harding denied at trial that he was cellmates with McDougal at the time he provided his Affidavit.[12] The State established on rebuttal that McDougal and

---

[8] *Id.*
[9] September 9, 2014 Trial Transcript, at pgs. 41-51.
[10] September 9, 2014 Trial Transcript, at pgs. 61-69; September 10, 2014 Trial Transcript, at pgs. 24-27.
[11] September 10, 2014 Trial Transcript, at pgs. 31-34.
[12] September 10, 2014 Trial Transcript, at pgs. 46-47.

3

Harding were, in fact, cellmates from August 10, 2014 and remained cellmates at the time of trial (September 2014).[13]

14.     Harding also claimed that before exiting the vehicle to buy the drugs, he was with McDougal and his own girlfriend. Harding further testified that it was his own girlfriend that had been sitting in the front passenger seat. Harding claimed that he and his girlfriend got out of the car, leaving his gun behind in the car, and was only away for about 10 minutes, when he returned to see the police at the car.[14] He had no idea who Brown was, he did not see her in the vehicle, and did not place her at the scene of incident.[15]

15.     McDougal was arrested and indicted on charges of PFBPP, PABPP and CCDW. He was convicted of all three charges.

## DEFENDANT'S RULE 61 MOTION

16.     On June 8, 2016, McDougal filed a motion for postconviction relief along with a request for the appointment of counsel. The motion for appointment of counsel was granted and on December 27, 2016, counsel was appointed. A briefing schedule was entered.

17.     On March 22, 2017, Rule 61 counsel, John F. Kirk, IV, Esquire, filed an Amended Motion for Postconviction Relief. On April 26, 2017, McDougal filed a *pro se* supplement to the Amended Motion filed by counsel, raising one additional issue. Thereafter, McDougal's trial counsel submitted an Affidavit responding to McDougal's ineffective assistance of counsel claims, the State filed a response to Defendant's motion, and Rule 61 counsel filed a reply thereto.

---

[13] September 10, 2014 Trial Transcript, at pg. 83.
[14] September 10, 2014 Trial Transcript, at pgs. 37-42.
[15] September 10, 2014 Trial Transcript, at pgs. 37-39.

4

18. Following full briefing on the motion, Mr. Kirk became employed with the Public Defender's Office, and new counsel, Benjamin Gifford, Esquire, was appointed to replace Mr. Kirk as McDougal's Rule 61 counsel.

19. In the subject motion, McDougal, through Rule 61 counsel, asserted the following grounds for relief: 1) the theory of constructive possession upon which the counts of PFBPP and PABPP were based was improperly presented to the jury; and 2) defense counsel was ineffective for failing to object to an impermissible comment made by the prosecutor during closing arguments. McDougal, *pro se*, raises an additional issue that defense counsel was ineffective for stipulating that McDougal was a person prohibited and not severing the CCDW charge from the PFBPP and PABPP charges. McDougal asserts that trial counsel was ineffective as to these three claims for failing to object and raise these issues.

### The PFBPP and PABPP Convictions Should be Vacated and a New Trial Held

20. McDougal is correct in his claim that the theory of constructive possession upon which the counts of PFBPP and PABPP were based was improperly presented to the jury. McDougal's Trial Counsel, in his Affidavit in response to McDougal's Rule 61 motion, admits that he failed to catch the improper instruction and object to it.[16] The convictions for PFBPP and PABPP should be vacated and a new trial held on these charges.

21. To establish constructive possession for PFBPP and PABPP, the State must prove the defendant: (1) knew the location of the gun (or ammunition); (2) had the ability to

---

[16] Superior Court Docket No. 79- Affidavit of Defense Counsel in Response to Defendant's Rule 61 Motion.

exercise dominion and control over the gun (or ammunition), and (3) *intended* to exercise dominion and control over the gun (or ammunition).[17]

22. A defendant's *intention* is a required element of the constructive possession jury instruction when a defendant is charged with PFBPP and PABPP.

23. *Gallman v. State*,[18] is a case involving charges of possession of a deadly weapon by person prohibited (PDWPP) and CCDW. In *Gallman*, like the subject action, a gun was found in the vehicle occupied by the defendant. The same three elements needed to be established for a PDWPP conviction as for a PFBPP and PABPP conviction. In *Gallman*, the trial court gave the same jury instruction on the PDWPP charge as the trial court gave in this case on the PFBPP charge. In *Gallman*, the trial court gave the following instruction on constructive possession for PDWPP:

> "Constructive possession" means that the weapon was within the defendant's reasonable control; that is, on or about [the defendant's] person, premises, belongings or vehicle. In other words, defendant had constructive possession over the weapon if she had both the knowledge of the weapon's presence and the power at the time to exercise control over the weapon.[19]

24. The trial court in this case gave the same instruction on the PFBPP charge as the *Gallman* court gave on the PDWPP charge.[20]

25. In *Gallman,* the Delaware Supreme Court held that this instruction on constructive possession was not a correct statement of the law because the trial court did not inform the

---

[17] *Bessicks v. State*, 2017 WL 1383760, *2 (Del. 2017); *Moody v. State*, 2016 WL 768353, *1 (Del. 2016); *Lum v. State*, 101 A.3d 970, 971 (Del. 2014).
[18] *Gallman v. State*, 14 A.3d 502 (Del. 2011).
[19] *Gallman v. State*, 14 A.3d 502, 504 (Del. 2011).
[20] September 10, 2014 Trial Transcript, at pg. 117.

6

jury that to convict the defendant of PDWPP, it was required to find that the defendant *intended* to exercise dominion and control over the destructive weapon.[21]

26.    The Delaware Supreme Court held that a jury instruction on the law of constructive possession for PDWPP (as well as PFBPP and PABPP), which accurately states the law, is as follows:

> Constructive possession means that the deadly weapon was within the defendant's reasonable control. That is, it was about his person, premises, belongings, or vehicle. In other words, the defendant had constructive possession over the deadly weapon if he had both the power **and the intention**, at a given time, to exercise control over the deadly weapon, either directly or through another person.[22] (emphasis added).

27.    This accurate jury instruction was not given in *Gallman* nor was it given in the subject action. In the subject action, neither the written jury instruction on the PFBPP charge[23] nor the instruction as read to the jury[24] contained the language "had both the power and *the intention*, at a given time, to exercise control."

28.    In *Gallman,* the Delaware Supreme Court held that even if the jury believed that the defendant knew the weapon was present, it is a proper defense to the PDWPP charge that defendant had no intention to exercise control over it. A defendant has constructive possession over a firearm only if the defendant has both the power and the intention, at a given time, to exercise control over it either directly or through another person.[25]

---

[21] *Gallman v. State,* 14 A.3d at 506.
[22] *Gallman v. State,* 14 A.3d 502, 506 (Del. 2011), citing the jury instruction given in, *Eley v. State,* 2010 WL 5395787 (Del. 2010).
[23] Superior Court Docket No. 31- Jury Instructions, at pgs. 7-8.
[24] September 10, 2014 Trial Transcript, at pg. 117.
[25] *Gallman,* 14 A.3d at 504-506.

29. Although a party is not entitled to a particular jury instruction, a party does enjoy the "unqualified right" to a correct statement of the law.[26] In *Gallman,* the Delaware Supreme Court held that the defendant's unqualified right to a correct statement of law was violated when the trial court's instruction on the constructive possession component of the PDWPP charge omitted the state of mind required for guilt. The trial court did not correctly state the law so the jury could perform its duty.[27] The jury instructions omitted that in order to convict the defendant of constructive possession, the jury needed to find that the defendant *intended* to exercise dominion and control over the weapon.

30. In the subject action, like the *Gallman* action, the gun (and ammunition) was found in the vehicle occupied by the defendant. In the subject action, there was no DNA or fingerprints linking McDougal to the gun. Constructive possession was the principal theory supporting the PFBPP and PABPP charges.[28] To compound the incomplete jury

---

[26] *Gallman v. State,* 14 A.3d 502, 504-506 (Del. 2011).
[27] *Gallman,* 14 A.3d at 504-506.

[28] See, prosecutor's opening statement- "[p]ossessing something doesn't just mean somebody is standing there holding the gun . . .Possession can be something that is on or about the person, in their vehicle, part of their belongings as long as they have access to it or control over it." September 9, 2014 Trial Transcript, at pg. 14.

Prosecutor's closing argument- "[c]onstructive possession means that the weapon was in the defendant's reasonable control, on or about the person's premises, his belongings, or in his vehicle. There's no question that the gun was in the defendant's vehicle and he had constructive possession. The question goes back to whether or not he had that knowingly." September 10, 2014 Trial Transcript, at pg. 89.

Defendant's trial counsel's opening statement- There were no fingerprints or DNA linking McDougal to the gun. The issue is whether defendant even knew the gun was there. This case is "about possession."- September 9, 2014 Trial Transcript, at pgs. 15-16.

Defendant's trial counsel's closing argument- no DNA, no fingerprints. Sole basis for charging McDougal with these offenses is that a gun was found on the floor behind his seat. September 10, 2014 Trial Transcript, at pg. 101.

instruction, during closing arguments, the prosecutor incorrectly advised the jury that the defendant's intent was not a required element to support a conviction.[29]

31.    In the subject action, McDougal likewise had an unqualified right to a correct statement of law on constructive possession on the PFBPP and PABPP charges. The trial court gave the same jury instruction (both written and oral) on constructive possession as the *Gallman* court, and likewise omitted the state of mind required for guilt. Both here and in *Gallman,* the jury instructions omitted that in order to convict the defendant of constructive possession, the jury needed to find that the defendant *intended* to exercise dominion and control over the weapon (and ammunition). The jury was required to find that defendant's possession was intentional. That was not properly explained to the jury by the trial court.

32.    In the subject action, unlike the written jury instruction on the PFBPP charge, the written jury instruction on the PABPP charge did state the correct law for constructive possession.[30] The jury instruction for constructive possession for PABPP did contain the language "has both the power and the intention, at a given time, to exercise control."[31] However, the trial court did not read this correct statement to the jury. When the trial court read this instruction to the jury prior to deliberations, it made no mention of McDougal's intent. Instead, the trial court stated: "The definition of 'possession' is exactly the same as it was in the prior instruction. I won't take your time to reread those because they're exactly the same."[32]

---

[29] During closing argument, the prosecutor stated that in order to establish possession of PFBPP, the State needed to prove that the defendant knowingly possessed or controlled a firearm. "It doesn't require intentional." It requires that defendant was aware that he possessed and controlled it. September 10, 2014 Trial Transcript, at pg. 88.

[30] Superior Court Docket No. 31- Jury Instructions, at pg. 9.

[31] Superior Court Docket No. 31- Jury Instructions, at pg. 9.

[32] September 10, 2014 Trial Transcript, at pg. 118.

9

33. By reinforcing an incorrect statement of law, instead of reading the correct statement of law, the charge of PABPP should also be set aside and retried. When a jury instruction as actually given by the trial court is confusing or inaccurate as to undermine either the jury's ability to reach a verdict or the confidence in their ability to do so fairly under the circumstances, the conviction should be set aside and a new trial held on that charge.[33]

34. Here, like *Gallman*, since the jury was not provided with the correct statement of law in order to perform its duty, the convictions for PFBPP and PABPP should be set aside and a new trial held on these charges.

### The CCDW Conviction Was Proper and Shall Remain

35. The conviction on the CCDW charge was proper in all respects. The jury instruction given on the CCDW charge was an accurate statement of law. That conviction should remain.

36. In *Gallman*, the Delaware Supreme Court held that the jury instruction given on the CCDW charge was an accurate statement of law.[34] In this case, the trial court gave the same instruction on the CCDW charge that the *Gallman* court gave in that action.[35]

37. The elements needed to be established to support a conviction for CCDW is different from those elements needed to be established to support a conviction for PFBPP or PABPP. For a CCDW conviction, the weapon must have been under the defendant's immediate control at the time. That determination is to be made by considering whether the weapon was immediately available and accessible to the defendant.[36]

---

[33] *Gallman*, 14 A.3d at 504.
[34] *Gallman*, 14 A.3d at 504.
[35] September 10, 2014 Trial Transcript, at pgs. 119-120.
[36] *Gallman*, 14 A.3d at 504-505.

38. In this case, the jury instruction on the CCDW charge was proper. It correctly stated the law. The CCDW conviction shall remain.

## The Remaining Claims in the Rule 61 Motion Are Without Merit

39. Rule 61 counsel raised one other claim in the subject Rule 61 motion and McDougal raised an additional claim *pro se*. Through Rule 61 counsel, McDougal claims that his trial counsel was ineffective for failing to object to an impermissible comment made by the prosecutor during closing arguments. Specifically, the prosecutor during closing argument commented on Maurice Harding's testimony at trial that the gun at issue belonged to him. The prosecutor stated that Harding had nothing to lose by testifying on McDougal's behalf. The prosecutor asked the jury "why would somebody have a witness testify if they didn't do anything wrong?"[37]

40. In order to prevail on an ineffective assistance of counsel claim, Defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[38] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[39]

41. Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[40] Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that

---

[37] September 10, 2014 Trial Transcript, at pg. 99.
[38] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).
[39] *Id.* at 687-88, 694.
[40] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

11

counsel's conduct fell within a wide range of reasonable professional assistance.[41] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[42]

42. McDougal's trial counsel, in his Affidavit in response to this Rule 61 Motion, explains that the State made a number of impermissible comments during closing argument. He attempted to strike the appropriate balance between disrupting the proceedings and ensuring that the jury was adequately reminded that the State's opinion did not matter and that it was the Jury's duty to determine the facts and credibility of the witnesses.[43]

43. The trial court explained to the jury before closing arguments that "[t]o the extent an attorney inadvertently offers their own personal opinion about the truth or falsity of any evidence, you are to disregard that personal opinion in its entirety, because you are the sole finders of fact. You decide issues of credibility."[44]

44. McDougal's trial counsel had objected to another impermissible comment made by the prosecutor during closing and the court sustained the objection and cautioned the jury once again with "[l]adies and gentlemen, you should disregard that last comment to the extent the prosecution is insinuating the personal opinion about the truth or falsity about this particular witness' testimony. You must disregard it in its entirety. You are the sole and exclusive judges of the facts. You decide what testimony is credible and what testimony is not."[45]

---

[41] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008).
[42] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).
[43] Superior Court Docket No. 79- Affidavit of Defense Counsel in response to Defendant's Rule 61 Motion.
[44] September 10, 2014 Trial Transcript, at pg. 84.
[45] September 10, 2014 Trial Transcript, at pgs. 113-114.

12

45. Trial counsel's decision whether or not to object to the prosecutor's inappropriate statements was a tactical decision as he attempted to strike the appropriate balance between disrupting the proceedings and ensuring that the jury was adequately reminded that the State's opinion did not matter and that it was the Jury's duty to determine the facts and credibility of the witnesses.[46]

46. Moreover, in McDougal's trial counsel's closing argument, he addressed the State's comments about Harding's testimony.[47]

47. Reviewing courts must ignore the "distorting effects of hindsight" and proceed with a "strong presumption" that counsel's conduct was reasonable.[48] Great weight and deference are given to tactical decisions by the trial attorney. There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[49] McDougal has failed to overcome this strong presumption.

48. Defendant has failed to establish that trial counsel's conduct in not objecting to every objectionable statement made by the prosecutor during closing arguments was deficient.

49. McDougal's final claim, raised *pro se,* is that trial counsel was ineffective for stipulating that he was a person prohibited and for not having severed the PFBPP and PABPP charges from the CCDW charge. McDougal was a person prohibited because he was convicted of Escape After Conviction in March 2011.

---

[46] Superior Court Docket No. 79- Affidavit of Defense Counsel in response to Defendant's Rule 61 Motion.
[47] September 10, 2014 Trial Transcript, at pgs. 102-106.
[48] *Dale v. State,* 2017 WL 443705, at *2 (Del. 2017).
[49] *Strickland v. Washington,* 466 U.S. 668, 689 (1984); *Harrington v. Richter,* 131 S.Ct. 770 (2011).

13

50. Trial counsel made the tactical decision that he did not desire to sever the "person prohibited" charge from the "relatively minor" CCDW charge. [50] Instead trial counsel chose to stipulate that McDougal was a person prohibited and requested a limiting instruction that the jury not speculate as to the reason why he is a person prohibited.[51]

51. Stipulating to a defendant's prohibited status is certainly an acceptable option. The three charges presented in the subject action are not always severed. [52] It is an acceptable option for the charges to be tried together.[53]

52. The trial court indicated it would give the "standard instruction" on the stipulation of the person prohibited status.[54] The mere fact that there is a standard instruction suggests that this is at least an acceptable option.

53. In facts similar to those presented in the subject case, the Delaware Supreme Court in *Dale v. State*[55], held that it was not prejudicial for the PFBPP and PABPP charges to be tried with the CCDW charge.[56] Severance is not required. The Delaware Supreme Court cited several cases in which the same charges presented herein were all tried together.[57]

54. In this case, during the State's closing, the trial court interrupted the State and advised the jury that "[i]t would be impermissible and inappropriate for you to speculate as to why the defendant was a prohibited person. That should bear no place in your

---

[50] Superior Court Docket No. 79- Affidavit of Defense Counsel in response to Defendant's Rule 61 Motion.
[51] September 9, 2014, at pg. 6-7.
[52] *Dale v. State*, 2017 WL 443705 (Del. 2017)(PFBPP, PABPP and CCDW charges not severed at trial. Parties stipulated defendant was a person prohibited. No ineffective assistance of counsel.); *Thomas v. State*, 2015 WL 2169288 (Del. 2015).
[53] See, *Dale v. State*, 2017 WL 443705, ftnt. 23 (Del. 2017)(citing cases when the charges are not severed but were tried together).
[54] September 10, 2014 Trial Transcript, at pg. 4.
[55] *Dale v. State*, 2017 WL 443705 (Del. 2017).
[56] *Dale v. State*, 2017 WL 443705, at *2 (Del. 2017).
[57] See, *Dale v. State*, 2017 WL 443705, at *2 (Del. 2017).

14

deliberations. You are merely to assume that and then consider the other elements that the Court is going to put to you."[58]

55. Severance is appropriate where the defendant can show prejudice from the joinder. A defendant making an ineffective assistance of counsel claim must show that joinder of the offenses was sufficiently prejudicial in that it was objectively unreasonable for defense counsel not to move for severance.[59]

56. McDougal's trial counsel's decision to stipulate to McDougal's person prohibited status and for all three charges to be tried together was a sound strategic decision that minimized any prejudice from the charges being tried together and that also kept McDougal's prior felony conviction from being presented to the jury at trial on the PFBPP and PABPP charges.

57. McDougal has failed to establish that counsel's trial decisions in this regard was deficient or that he suffered any prejudice as a result thereof. This claim is without merit.

---

[58] September 10, 2014 Trial Transcript, at pgs. 87-88.
[59] *Dale v. State,* 2017 WL 443705, at *2 (Del. 2017).

15

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be granted in part and denied in part. Defendant's motion should be granted as to the PFBPP and PABPP convictions. These convictions should be set aside and a new trial held on these charges. The conviction on the CCDW charge shall remain in place. The motion should be denied in all other respects.

**IT IS SO RECOMMENDED.**

Commissioner Lynne M. Parker

oc:    Prothonotary
        T. Andrew Rosen, Esquire

16